UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
NORO HEALY

      Plaintiff,      MEMORANDUM AND ORDER
                  17-CV-04016
 - against -


BOARD OF EDUCATION RETIREMENT
SYSTEM OF THE CITY OF NEW YORK,
RAYMOND ORLANDO, and SANFORD RICH,

      Defendants.
---------------------------------------------------------x
GLASSER, Senior United States District Judge:

  Plaintiff Noro Healy ("Plaintiff" or "Healy") brought this action against Defendants Board of Education Retirement System of the City of New York ("BERS"), Raymond Orlando ("Orlando"), and Sanford Rich ("Rich"), (collectively, "Defendants"), alleging discrimination and retaliation in violation of the First and Fourteenth Amendments of the United States Constitution, New York Civil Service Laws, and New York State and City Human Rights Laws. (ECF No. 1-1, "Am. Compl."). Pending before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 23). For the reasons explained below, Defendants' motion is **GRANTED**.

## BACKGROUND

  Unless otherwise noted, the following facts are undisputed.

**The Parties**

  BERS is an independent New York City agency charged with issuing and managing retirement benefits to certain city employees. (Am. Compl. ¶ 7). Healy, a self-identified African-American, began working at BERS on October 1, 2003 as the Director of Administration of

1

Personnel and Security and in May 2015, he was given the additional title of Director of Information Technology ("IT"). (Am. Compl. ¶ 5). Rich, who is Caucasian, became the BERS Executive Director in January 2016 and was Healy's direct supervisor. (Defendants' Statement Pursuant to Local Civil Rule 56.1 ("Def. Rule 56.1") ¶ 48; Am. Compl. ¶ 51). Orlando is the Department of Education's ("DOE") Chief Financial Officer and co-chair of BERS' Board of Trustees. (Am. Compl. ¶ 9).

As the Director of Administration of Personnel and Security, Healy's responsibilities included handling administrative duties, ensuring all security systems were active and that personnel had access to those systems, overseeing renovations, camera surveillance systems, door mechanisms, system security, hiring and firing of all staff, and maintaining proper staffing levels. (Def. Rule 56.1 ¶ 5). When he was promoted to Director of IT, he was also charged with overseeing IT systems, ensuring the systems were secure, ensuring various projects were ongoing, and oversight of the Comprehensive Pension Management System project, discussed further below. (*Id.* at ¶ 6). From the time he began his employment until his retirement on March 9, 2016, he claims he performed his duties in an exemplary manner. (Am. Compl. at ¶ 15).

**Healy's Disagreements with Management**

Healy's claims derive from his disagreements with BERS and the DOE regarding (1) an IT project, (2) the DOE's hiring practices, (3) the lack of disciplinary action in connection with a certain employee, (4) his preclusion from the BERS Executive Director interview process, and (5) his subsequent demotion. The Court will address each of these in turn.

*The IT Project*

In 2009, two consultants were hired to work on a project to assess BERS IT systems and implement a Comprehensive Pension Management System (the "CPMS Project"). (Exhibit Y;

Am. Compl. ¶ 17). Healy was excluded from the planning and implementation of that project. (*Id.*).

Throughout 2015, Healy complained to Orlando and other BERS Board members that the CPMS Project consultants lacked technical knowledge, purposely withheld documentation, willfully misrepresented work performed, and deceived BERS regarding certain pitfalls of the Project, resulting in delays and cost overruns. (Am. Compl. ¶¶ 53-54; Exhibit Z). The Office of the Inspector General was invited to conduct an investigation of those complaints and ultimately concluded that they were unsubstantiated. (Exhibit Y). Specifically, it's report provided that "Healy 'never saw a project plan or any other document on the CPMS Project'" and that "he is not aware of any specific fraud or misconduct during the project." (*Id.*). Further, other BERS employees provided sufficient reasons for the Project's delay and budget issues. (*Id.*). Orlando and the Board dismissed his complaints.

***The DOE's Hiring Practices***

On April 27, 2015, BERS hired Keishone Johnson, an African-American, as the Manager of Infrastructure for the IT Department with a salary of $92,000. (Am. Compl. ¶ 27). Healy, as the Director of Personnel, determined Johnson's salary based on the salary of his predecessor. (*Id.* at ¶ 28). However, Orlando would not process that salary in the DOE's payroll system, which is shared by BERS, because it was almost twice the salary Johnson made at his previous job. (*Id.* at ¶ 31; Def. Rule 56.1 ¶ 15). Healy complained about Orlando's interference with his determination of Johnson's salary to the DOE's Division of Human Resources and Talent, the Special Commissioner of Investigation for the New York City School District ("SCI"), the DOE's Office of General Counsel, and the New York City Law Department. (Am. Compl. ¶¶ 32-39). Healy ultimately prevailed and Johnson's $92,000 salary was approved. (*Id.* at ¶ 39).

*The Lack of Disciplinary Action as to Daniel Miller*

In May 2015, Healy became aware that Daniel Miller, who is African-American and was the DOE's Director of Benefits Administration, unlawfully stored confidential personnel files belonging to former and current DOE employees on his personal "drop box." (*Id.* at ¶ 40; Exhibit N). Healy complained of that to the BERS Executive Director and the SCI, who conducted an investigation that is still ongoing. (Am. Compl. ¶ 41).

*Exclusion of Healy from the Appointment of Rich and Healy's Subsequent Demotion*

In May 2015, BERS started the selection process for a Permanent Executive Director. (Def. Rule 56.1 ¶ 35). Before the interview process began, Orlando, Miller, and other BERS Board members expressed concern that Healy should not participate in the interviews because he had a vested interest in the selection of the current Acting Executive Director, who had promoted Healy to Director of IT. (Exhibit S). The Board agreed that Healy should not participate in the interviews. (Exhibit T).

Rich was ultimately appointed as the Permanent Executive Director of BERS with a start date of January 25, 2016 and he immediately replaced Healy with Miller as Acting Director of IT. (Def. Rule 56.1 ¶ 48; Exhibit BB). Two months later, Rich further demoted Healy to a civil service title of Associate Education Analyst with a $70,000 reduction in salary. (Am. Compl. ¶ 78). To avoid the demotion, salary reduction, and negative consequences to his retirement benefits, Healy elected to retire. (*Id.* at ¶ 78-79). Approximately one year later, he brought this lawsuit. (ECF No. 1-1).

**LEGAL STANDARD**

Summary judgment is appropriate when there are "no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*

*also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). A genuine issue of material fact exists if a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to demonstrate the absence of a genuine issue of material fact, and the Court must draw all reasonable inferences in favor of the non-moving party. *Id.* at 255.

If the summary judgment movant satisfies its initial burden of production, the burden of proof shifts to the non-movant who must demonstrate that a genuine issue of fact does exist. *Id.* at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Once the nonmovant has met that requirement, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996).

The Court's role in a motion for summary judgment is one of "issue-finding," not "issue-resolution." *Ramirez v. New York City Bd. of Educ.*, 481 F. Supp. 2d 209, 216 (E.D.N.Y. 2007). Therefore, the Court's charge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I. Healy's First Amendment Retaliation Claim

It is well settled that "a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Garcetti v. Ceballos*,

547 U.S. 410, 413 (2006). To determine whether a state employee's speech is protected, the Court must conduct a two-part inquiry. First, the Court must determine "whether the employee spoke as a citizen on a matter of public concern." *Id.* at 418. If the answer is no, the employee has no cause of action under the First Amendment. *Id.* at 418, 421 ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). If the answer is yes, the question becomes "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.*

Healy claims that he raised three matters of public concern: (1) Orlando's unlawful interference with Johnson's salary, leaving her to work for two months without pay; (2) Miller's unlawful download of employees' personal information; and (3) misrepresentations by the CPMS Project consultants. (ECF No. 36 at 2-3). The Court disagrees and finds that Healy was not acting as a citizen who was speaking on matters of public concern, but rather as a BERS employee who was speaking on matters affecting himself and other employees only. Healy's grievances were in "furtherance of his core duties" as Director of Administration of Personnel and Security and Director of IT and had "no relevant analogue to citizen speech." *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 198 (2d Cir. 2010). Accordingly, Defendants' motion for summary judgment of Healy's First Amendment retaliation claim is granted.

## II. Healy's Fourteenth Amendment Equal Protection Claim

Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must first establish a *prima facie* case of disparate treatment "by demonstrating that: (1) [he] is a member of a protected class; (2) [his] job performance was satisfactory; (3) [he]

suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination." *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006). If the plaintiff establishes a *prima facie* case, then the defendant must articulate "a legitimate, non-discriminatory reason for the action." *Id.* If the defendant meets his burden, then the plaintiff must "prove discrimination, for example, by showing that the employer's proffered reason is pretextual." *Id.*

Healy alleges that when Rich became the BERS Executive Director, he was immediately demoted and all but one of the African-American managers at BERS were fired. (ECF No. 36 at 22-24). Those allegations do not establish a *prima facie* case of discrimination. Rich testified that he demoted Healy because (1) he did not have sufficient experience to serve as the Acting Director of IT, (2) he was not supportive of the CPMS Project, which was directed by the Board, (3) he systematically hired unqualified people, and (4) he was "too paper-entangled in many things," such as recording employees' presence at their desks. (Exhibit AA at 90:16-20; 188:5-189:2). The record does not give rise to an inference of discrimination, especially when considering that Rich appointed Miller, who is African-American, as Director of IT to replace Healy. That Rich also dismissed other African-American employees is of no consequence to Healy's claim absent a showing that Healy himself was subject to discrimination. Accordingly, Defendants' motion to for summary judgment of Healy's Equal Protection claim is granted.

### III. Healy's Section 1981 Claim

Defendants correctly note that 42 U.S.C. § 1981 does not provide a separate private right of action against state actors. *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018). In any event, when a plaintiff alleges Section 1981 and Section 1983 claims for the same conduct, a court may dismiss the Section 1981 claim or deem it merged with the Section 1983 claim; the

7

result, in practice, is the same. *Wynder v. McMahon*, No. 99 CIV. 772 (ILG), 2013 WL 1759968, at *5 (E.D.N.Y. Apr. 24, 2013), *aff'd*, 565 F. App'x 11 (2d Cir. 2014). If the Court construes Healy's Section 1981 claim as brought under Section 1983, it still fails because Healy did not allege that the "challenged acts were performed pursuant to a municipal policy or custom," as required to maintain a Section 1983 action against a municipality. *Duplan*, 888 F.3d at 621. Accordingly, Healy's Section 1981 claim is dismissed.

## CONCLUSION

Accordingly, for the reasons set forth above, Defendants' motion for summary judgment is **GRANTED**. Having granted summary judgment of Plaintiff's federal claims, the Court no longer has jurisdiction to entertain any state or city law claims. *Dunton v. Suffolk Cty., State of N.Y.*, 729 F.2d 903, 910 (2d Cir. 1984), *amended*, 748 F.2d 69 (2d Cir. 1984).

SO ORDERED.

Dated: Brooklyn, New York
March 18, 2019

/s/_____
I. Leo Glasser            U.S.D.J.